IN THE U.S. DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

LANLAN LI

    Plaintiff,

v.

FRESENIUS KABI USA, LLC

    Defendant.

Case No. 20-cv-07110

Judge Mary M. Rowland

**PLAINTIFF LANLAN LI'S MEMORANDUM IN SUPPORT OF HER RESPONSE TO DEFENDANT FRESENIUS KABI USA, LLC'S MOTION FOR SUMMARY JUDGMENT**

NOW COMES Plaintiff, Lanlan Li (hereinafter referred to as "Plaintiff," "Lanlan," or "Ms. Li") by and through her attorneys, CARLA D. AIKENS, PL.C, and for her Memorandum in Support of her Response to Defendant Fresenius Kabi USA, LLC's Motion for Summary Judgment, states as follows:

I.    **ADDITIONAL FACTUAL BACKGROUND**

Plaintiff has duly responded to Defendant's, Statement of Material Facts in accordance with the local rules. Along with those responses, Plaintiff asserts the following additional facts as material to understanding the current case.

Defendant asserts throughout its motion that it attempted to make reasonable accommodations in the same manner it would have for any of its employees; however, that is not the case when one examines Plaintiff's body of work,

1

Plaintiff's resume, and Defendant's own prior actions in accommodating a similar disability. (Statement of Material Fact ("SMF") ¶¶ 10, 17, 22, 37). In fact, Defendant promoted an underqualified individual in three years to a position higher than Plaintiff, where lab bench work would no longer be required. (SMF ¶ 17). Purvaba Sarviaya, the underqualified individual, had no prior experience when she was hired on in the same role as Plaintiff, while Plaintiff possessed over a decade and a half of experience on the date of her hiring. (SMF ¶ 17). Ms. Sarviaya received this promotion after only three (3) years with the Defendant; Plaintiff had been with Defendant five (5) years during the dates relevant to this claim. (SMF ¶ 17). Plaintiff even received praise from her superiors and colleagues for her dedication and work product, in particular on the complex Vasopressin Project. (SMF ¶ 17, 40)[1] (*See* Defendant's Exhibit G).

Unfortunately for Plaintiff, working for a company such as Defendant, having the national origin is Chinese, did not entitle her to the same promotion opportunities as Ms. Sarviaya, and others, who are of Indian descent. (Exhibit A at 148, 149-50).[2] In fact, Defendant did not even differentiate between individuals from the entire continent of Asia. (SMF ¶ 6) Had the same opportunities been equally available to Plaintiff, she would no longer be involved with bench work as

---

[1] Plaintiff received a merit bonus for her work evidencing that she was at the bare minimum competent if not excelling in her current position.

[2] At least 75 people in Plaintiff's Department are Indian and receive preferential treatment in terms of "credit, job load, timeline, and the promotion." Exhibit A at 148.

2

Ms. Sarviaya has not performed bench work since her promotion. (Exhibit A at 149).

## II.　ARGUMENT

### A. Standard of Review

The nonmoving party, under Fed. R. Civ. P. 56(c), must set-forth specific facts showing there is a genuine dispute for trial. Such a dispute exists when evidence is presented that a reasonable jury could return a favorable verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, along with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether there exists a genuine issue of material fact, the court must resolve all ambiguities and draw all factual inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).

### B. Plaintiff Can Establish Disability Discrimination under the ADA and/or IHRA.

The ADA prohibits discrimination against a "qualified individual with a disability." A plaintiff bringing suit under the ADA must suffer from a "disability," as defined in the Act, to invoke the Act's protection. Assuming that Plaintiff was

disabled under the terms of the Act, to be "qualified," she must also be able to perform all essential functions of her job, either with or without a reasonable accommodation for any disability. 42 U.S.C. § 12112(a); 29 C.F.R. § 1630.4; 29 C.F.R. app. §1630.9. Reasonable accommodations may include, but are not limited to:

- Making existing facilities used by employees readily accessible to and usable by persons with disabilities.

- Job restructuring, modifying work schedules, reassignment to a vacant position; and

- Acquiring or modifying equipment or devices, adjusting or modifying examinations, training materials, or policies, and providing qualified readers or interpreters.[3]

The purpose of said accommodations, and the ADA more generally, is to allow people with disabilities to enjoy equal employment opportunities with each accommodation dependent on the needs of the individual employee. *See EEOC Fact Sheet*. Further the EEOC stated:

> Once a reasonable accommodation is requested, the employer and the **individual should discuss the individual's needs and** identify the appropriate reasonable accommodation. Where more than one accommodation would work, the employer may choose the one that is less costly or that is easier to provide. *See EEOC Fact Sheet.*

---

[3] *Fact Sheet: Disability Discrimination*; Issued January 15, 1997; Published by the U.S. Equal Employment Opportunity Commission, https://www.eeoc.gov/laws/guidance/fact-sheet-disability-discrimination (hereinafter referenced as "EEOC Fact Sheet") (last accessed December 5, 2022).

1. <u>Plaintiff Can Show that She was Discriminated Against Due to her Disability.</u>

Plaintiff was discriminated against due to her disability. Defendant asserts, in contrast to its own exhibits, that Plaintiff was not recommended for a promotion to Principal Scientist due to "her poor performance on the Vasopressin Project." However, Defendant's Exhibit G states her work on the Vasopressin Project "would help greatly" in her prospects to secure a promotion to Principal Scientist. (SMF ¶ 17).[4] Defendant also pointed out that Plaintiff earned a merit-based increased and a bonus outside of the normal cycle for her work on the very same project. (SMF ¶ 40) (Defendant's Exhibit E at 128-29) The "deficiencies" in Plaintiff's work were actually normal in the scientific field and not an outlier worthy of negatively impacting Plaintiff's work record. (SMF ¶ 7, 21).

Further, Defendant's employees had become frustrated due to the need for "modifications" to Ms. Li's Report, despite an admission that such "modifications" are the norm in the field. (*See* Defendant's Exhibit F at 18-20). Defendant's frustrations with a normal occurrence occurred barely a month prior to Plaintiff's first request for an accommodation. (*See* Defendant's Exhibit F at 20-22). Simply put, Defendant states simultaneously that Plaintiff's work was worthy of a bonus, raise, and recognition for promotion as well as being deficient and cause for

---

[4] "In appreciation of all your hard work an extra efforts, you have been awarded an out of cycle bonus!" (*See* Defendant's Exhibit G)

termination. This clearly cannot be the case as Defendant's own documents show Plaintiff was being commended for her work rather than reprimanded. It was due in large part to her disability that she received the discriminatory treatment and eventual termination.

Defendant next points to the laboratory bench work as an essential job function that could no longer be completed by Plaintiff due to her disability. However, Defendant had allowed other individuals to work from home and even allowed Plaintiff to undertake tasks other than bench work. (SMF ¶ 7, 10, 17, 37). Plaintiff never received communications from Mr. Weber asking for ways to accommodate Plaintiff's injury, nor did Plaintiff receive inquiries into the severity of her pain. (SMF ¶ 37). Not a single person in Defendant's employ engaged with Plaintiff in an interactive process to find out what accommodations could be made. (SMF ¶ 37). Plaintiff received a reduced opportunity to be accommodated as clearly shown by what others were offered and her accommodations were not given due diligence by Defendant.

Plaintiff had more knowledge an expertise than prior employees who had been promoted to positions above her. (SMF ¶ 7, 10, 17, 37). Purvaba Sarviaya, the underqualified individual, had no prior experience when she was hired on in the same role as Plaintiff, while Plaintiff possessed over a decade and a half of experience on the date of her hiring. (SMF ¶ 17). Ms. Sarviaya received this

promotion after only three (3) years with the Defendant; Plaintiff had been with Defendant five (5) years during the dates relevant to this claim. (SMF ¶ 17). Ms. Sarviaya role did not include bench work and would have been far more accommodating to Plaintiff's back pain as it was to Ms. Sarviaya's back pain. (Exhibit A at 149). This work was clearly less physically demanding since it accommodated Ms. Sarviaya's back pain and no doubt similar opportunities or tasks could have been extended to Plaintiff.

Defendant's own representative admitted Plaintiff would be available for rehire eligible for rehire "[i]f she were to present herself as in a particular way that we could accommodate her working or if she were to return to work full scale we would entertain returning her to work. (*See* Defendant's Exhibit E at 101-02). However, it is not solely on the Plaintiff to provide ways to accommodate her as the process should be interactive between employee and employer. Furthermore, this quote certainly strikes down any arguments Defendant makes in which they point to Plaintiff's work/work-product as a ground for her termination.

          2. <u>Plaintiff Can Show that Defendant Failed to Accommodate Her Disability.</u>

ii.
Plaintiff never received communications from Mr. Weber asking for ways to accommodate Plaintiff's injury, nor did Plaintiff receive inquiries into the severity of her pain. (SMF ¶ 37). Not a single person in Defendant's employ engaged with Plaintiff in an interactive process to find out what accommodations could be made.

7

(SMF ¶ 37). In fact, Defendant promoted an underqualified individual, who also suffered from back pain, in three years to a position higher than Plaintiff where lab bench work would no longer be required. (SMF ¶ 17). Purvaba Sarviaya, the underqualified individual, had no prior experience when she was hired on in the same role as Plaintiff, while Plaintiff possessed over a decade and a half of experience on the date of her hiring. (SMF ¶ 17). Ms. Sarviaya received this promotion after only three (3) years with Defendant; Plaintiff had been with Defendant five (5) years during the dates relevant to this claim. (SMF ¶ 17). Plaintiff even received praise from her superiors and colleagues for her dedication and work product, in particular on the complex Vasopressin Project. (SMF ¶ 17, 40)[5] (*See* Defendant's Exhibit G).

Unfortunately for Plaintiff, the same opportunities and accommodations were not available to her, and had the same opportunities been equally available to Plaintiff, she would no longer be involved with bench work, as Ms. Sarviaya has not performed bench work since her promotion. (Exhibit A at 149).

---

[5] Plaintiff received a merit bonus for her work, evidencing that she was, at the bare minimum, more than competent in her current position.

**C. Plaintiff Can Show National Origin Discrimination under Title VII and/or the IHRA.**

    i.

1. <u>Plaintiff Exhausted Her Federal Administrative Remedies.</u>

Plaintiff filed claims with the IDHR, which she sent to the EEOC to review. (SMF ¶ 36). A right to sue letter was requested, and the agency combined the charges, as evidenced by Plaintiff's Exhibit D. Between the two separate EEOC charges and the IDHR Charge, all claims were sent in for the appropriate investigatory period.[6] Plaintiff did what was needed on her end to exhaust the administrative remedies available to her.

2. <u>Plaintiff Can Establish a Prima Facie Case of National Origin Discrimination.</u>

Defendant promoted an underqualified individual in three years to a position higher than Plaintiff, where lab bench work would no longer be required. (SMF ¶ 17). Purvaba Sarviaya, the underqualified individual, had no prior experience when she was hired on in the same role as Plaintiff, while Plaintiff possessed over a decade and a half of experience on the date of her hiring. (SMF ¶ 17). Ms. Sarviaya received this promotion after only three (3) years with the Defendant; Plaintiff had been with Defendant five (5) years during the dates relevant to this claim. (SMF ¶ 17). Plaintiff even received praise from her superiors and colleagues for her

---

[6] IDHR charge#: 2020CA1223 included national origin, age, disability and retaliation; EEOC charge #: 440-2020-01046: failure to accommodate; EEOC charge # 440-2021-00176: included the charge for retaliation.

9

dedication and work product, in particular on the complex Vasopressin Project. (SMF ¶ 17, 40)[7] (*See* Defendant's Exhibit G).

Unfortunately for Plaintiff, working for a company such as Defendant, having the national origin is Chinese, did not entitle her to the same promotion opportunities as Ms. Sarviaya, and others, who are of Indian descent. (Exhibit A at 148, 149-50).[8] In fact, Defendant did not even differentiate between individuals from the entire continent of Asia. (SMF ¶ 6) Had the same opportunities been equally available to Plaintiff, she would no longer be involved with bench work as Ms. Sarviaya has not performed bench work since her promotion. (Exhibit A at 149). Defendant's own representative admitted Plaintiff would be available for rehire eligible for rehire "[i]f she were to present herself as in a particular way that we could accommodate her working or if she were to return to work full scale we would entertain returning her to work. (*See* Defendant's Exhibit E at 101-02). This quote certainly strikes down any arguments Defendant makes in which they point to Plaintiff's work/work-product as a ground for her termination.

Plaintiff was treated differently based upon her being a minority within the scientists in her department. (Exhibit A at 148, 149-50) (SMF ¶ 6). She has not received the same opportunities as her colleagues despite her voluminous

---

[7] Plaintiff received a merit bonus for her work evidencing that she was at the bare minimum competent if not excelling in her current position.

[8] At least 75 people in Plaintiff's Department are Indian and receive preferential treatment in terms of "credit, job load, timeline, and the promotion." Exhibit A at 148.

10

qualifications. A reasonable jury could determine based on the promotion track record of Defendant, Plaintiff's testimony, and Defendant's instance that Plaintiff was fired for poor performance, despite the Defendant's representative clearly testifying in opposition, that Defendant discriminated Plaintiff based upon her national origin.

### D. Plaintiff Can Establish Retaliation under the ADA, IHRA, and/or Title VII.

Plaintiff was retaliated against by Defendant. Defendant asserted, in contrast to its own exhibits, that Plaintiff was not recommended for a promotion to Principal Scientist due to "her poor performance on the Vasopressin Project." However, Defendant's Exhibit G states her work on the Vasopressin Project "would help greatly" in her prospects to secure a promotion to Principal Scientist. (SMF ¶ 17).[9] Defendant also pointed out that Plaintiff earned a merit based increased and a bonus outside of the normal cycle for her work on the very same project. (SMF ¶ 40) (Defendant's Exhibit E at 128-29) The "deficiencies" in Plaintiff's work were normal in the scientific field and not an outlier worthy of negatively impacting Plaintiff's work record. (SMF ¶ 7, 21).

Further, Defendant's employees allege that they had become frustrated due to the need for "modifications" to Ms. Li's Report, despite an admission that such

---

[9] "In appreciation of all your hard work an extra effort, you have been awarded an out of cycle bonus!" (*See* Defendant's Exhibit G)

11

"modifications" are the norm in the field. (*See* Defendant's Exhibit F at 18-20). Defendant's frustrations with a normal occurrence occurred barely a month prior to Plaintiff's first request for an accommodation. (*See* Defendant's Exhibit F at 20-22). Simply put, Defendant states simultaneously that Plaintiff's work was worthy of a bonus, raise, and recognition for promotion as well as being deficient and cause for termination. Defendant has put forth multiple reasons why Plaintiff was terminated, from poor performance to inability to complete her tasks.

Specifically, the task of laboratory bench work is allegedly an essential job function that could no longer be completed by Plaintiff due to her disability. However, Defendant had allowed other individuals to work from home and even allowed Plaintiff to undertake tasks other than bench work. (SMF ¶ 7, 10, 17, 37). Plaintiff never received communications from Mr. Weber asking for ways to accommodate Plaintiff's injury, nor did Plaintiff receive inquiries into the severity of her pain. (SMF ¶ 37). As soon as Plaintiff began her EEOC process, talks of termination began from her supervisor. Defendant retaliatorily terminated Plaintiff, as none of its proffered reasons hold weight when examined by the evidence offered in Defendant's own motion.

### E. Plaintiff Can Establish Age Discrimination under the ADEA and/or IHRA.

The ADEA protects individuals who are 40 or older from discrimination. *SeeFormella v. Brennan*, 817 F.3d 503, 514 (7th Cir. 2016) (citing the ADEA).

The ADEA provides, in relevant part, that it shall be unlawful for any employer "to discriminate against any individual…because of such individual's age." *Van Antwerp v. City of Peoria, Ill.*, 627 F. 3d 295, 297 (7th Cir. 2010) (quoting 29 U.S.C. §623(a)(1)).

Plaintiff filed claims with the IDHR, which she sent to the EEOC to review. (SMF ¶ 36) A right to sue letter was requested, and the agency combined the charges, as evidence by its email at Exhibit D acknowledging the request for a right to sue letter. Between the two separate EEOC charges and the IDHR charge, all claims were sent in for the appropriate investigatory period.[10] (*Id.*) But Plaintiff did what was needed on her end to exhaust the administrative remedies available to her.

Assuming the claims are not time barred, Plaintiff can establish a prima facie case of age discrimination. The primary question for the viability of such a claim is whether when considering the evidence "as a whole," such evidence "would permit a reasonable factfinder to conclude that the plaintiff's" age "caused the…discharge or other adverse employment action." *Ortiz v. Werner Enterprises, Inc.*, 834 F.3ed 760, 763-66 (7th Cir. 2016); s*ee also Carson v. Lake Cty., Indiana*, 865 F.3d 526, 532 (7th Cir. 2017). This forms a standard centered around whether a reasonable

---

[10] IDHR charge#: 2020CA1223 included national origin, age, disability and retaliation; EEOC charge #: 440-2020-01046: failure to accommodate; EEOC charge # 440-2021-00176: included with charge for retaliation.

13

juror could conclude that the plaintiff would have kept their job if they were outside the protected class and everything else remained the same. *Ortiz*, 834 F. 3d at 764-765.

Plaintiff is over the age of 40. Defendant has not shown that it treated any other older employees as it did her, nor did it even provide the ages of any other employees or attempt to explain why it would be entitled to summary judgment on the age claim, beyond that it alleges she did not exhaust the same.

Defendant asserts that Plaintiff cannot establish a prima facie case for age discrimination, in contrast to its own exhibits, due to her "report she prepared on the Vasporessin Project [which] was substandard, she deviated from standard testing practices, and the report could not be submitted to the FDA as expected."[11] However, Defendant's Exhibit G states her work on the Vasopressin Project "would help greatly" in her prospects to secure a promotion to Principal Scientist. (SMF ¶ 17).[12] Defendant also pointed out that Plaintiff earned a merit based increased and a bonus outside of the normal cycle for her work on the very same project. (SMF ¶ 40) (Defendant's Exhibit E at 128-29)

Defendant's employees, by their own admission, had become frustrated due to the need for "modifications" to Ms. Li's Report, despite a further admission that

---

[11] Defendant's Memorandum in Support at 18-19.

[12] "In appreciation of all your hard work an extra efforts, you have been awarded an out of cycle bonus!" (*See* Defendant's Exhibit G)

14

such "modifications" are the norm in the field. (*See* Defendant's Exhibit F at 18-20). The "deficiencies" in Plaintiff's work were normal in the scientific field and not an outlier worthy of negatively impacting Plaintiff's work record. (SMF ¶ 7, 21). Defendant states simultaneously that Plaintiff's work was worthy of a bonus, raise, and recognition for promotion as well as being deficient and the cause for termination. Both positions cannot be reconciled.

With no other offered reason for her termination in this section of its argument, logic would dictate the consistent position must be the correct one. Defendant cannot agree in its own Memorandum, Statement of Material Facts, and Exhibits whether Plaintiff's work was worthy of praise or the cause for her termination. This flip-flopping perspective certainly creates, at the bare minimum, doubt as to Defendant's assertions that Plaintiff's work product was somehow deficient. A reasonable juror could easily find such statements utterly destructive to Defendant's position, thereby creating a *prima facie* case under the framework laid out in *Ortiz*.

### III. CONCLUSION

Defendant has tried to point to Plaintiff's work product as a justification for the adverse employment action taken against Plaintiff. Its own exhibits counter these assertions for each count it attempts to make this assertion. With that in mind, combined with the bonus received, a merit increase, lack of promotion

despite her qualifications, different treatment from her colleagues, her performance review being sent to the legal department after she filed with the EEOC, accommodations not offered to her, and all other reasons listed herein, a reasonable juror could find in favor of the Plaintiff with all inferences and ambiguities resolved in favor of Plaintiff.

WHEREFORE Plaintiff respectfully requests this Honorable Court deny Defendant Fresenius Kabi USA, LLC's Motion for Summary Judgment for the reasons contained herein and in the attached Motion Response and Statement of Material facts.

Dated: December 5, 2022 	Respectfully Submitted,

/s/ Carla D. Aikens
Carla D Aikens (6296269)
CARLA D. AIKENS, P.L.C.
*Attorneys for Plaintiff*
615 Griswold Ste. 709
Detroit, MI 48226
carla@aikenslawfirm.com

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing instrument was served upon all parties to the above cause to each of the attorneys of record herein at their respective e-mail addresses via eFiling on December 5, 2022, by:

/s/ *Carla D. Aikens*